**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-628

SARAH LIEBERENZ, Individually and as Personal
Representative of THE ESTATE OF JACKSON MAES,
deceased,

Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAGUACHE,
COLORADO, in its official capacity; *et al*.

Defendants.

---

**PLAINTIFF'S OPPOSED MOTION TO EXTEND SCHEDULING ORDER DEADLINES**

---

Pursuant to the Local Rules and Fed. R. Civ. P. 16, Estate submits this Opposed Motion to Extend the Scheduling Order deadlines by sixty days.[1] Estate would advise the Court as follows:

## I.

## COMPLIANCE WITH LOCAL RULES

The undersigned counsel for the Estate hereby certifies he conferred with opposing counsel regarding the relief requested via email on March 30, April 1, and April 4-5, 2022. Although counsel for the Defendants indicated they had no inherent objection to an enlargement of the discovery period, despite a good faith effort, the parties were unable to reach an agreement as to the nature and scope of the enlargement. Defendants oppose the relief now sought.

---

[1] Under the current scheduling order, Discovery closes on Friday, April 8, 2022. (Doc. 71).

## II.

## INTRODUCTION AND BACKGROUND

On November 16, 2019, Jackson Maes verbalized acute suicidal ideation to Defendants Ken Wilson (Jail Commander), Miguel Macias (Jailer), and Elke Wells (Arresting Deputy) before committing suicide a few minutes later in cell 1 at the Saguache County Jail (SCJ).[2] Jackson hanged himself using a privacy curtain left in cell 1 in full view of the camera. In 2008, another inmate, Felix Granados, also committed suicide in cell 1 using the same privacy curtain. Despite verbalizing his suicidal ideation, Jackson was not placed on suicide watch and no suicide precautions were implemented. As a direct result of the Defendants' inaction, Jackson died alone that night in jail.

### A. POSSIBLE SPOLIATION OF RECORDED CALLS ABOUT JACKSON MAES

On **March 4, 2020**, Estate served a preservation letter on the Saguache County Sheriff's Office (SCSO) to preserve all audio recordings related to Mr. Maes. (Ex. 1, pp. 1-2). The SCSO acknowledged receipt of the letter the same day. (Ex. 2). On **April 13, 2020**, Estate served a CGIA notice on Saguache County, and later filed suit on **March 3, 2021**. (Ex. 3; Doc. 1).

On **August 30, 2021**, County Defendants responded to Document Request No. 6 requesting, among other things, audio associated with each suicide at the SCJ since it was converted to a jail. (Ex. 4, p. 2). The production included 9 audio recordings labeled COUNTY 1150-1158, all of which involved meetings of the Board of County Commissioners, and none of which involved audio from any recorded telephone line at the SCJ. (Ex. 5).

On **February 24, 2022**, Estate deposed Defendant Wilson and happened to inquire about audio recordings at the SCJ. Surprisingly, Wilson acknowledged that "all of our phone calls are

[2] Defendant Shelby Shields was in dispatch at the time and also knew Jackson made suicidal statements.

recorded." (Ex. 6, p. 202:12 – 203:4). Wilson further acknowledged that recorded calls are saved for one year, and that several calls regarding Jackson Maes were made from recorded lines at the SCJ, including: (1) calls by Defendant Wells seeking guidance in response to Jackson verbalizing acute suicidal ideation (*id*. at p. 254:4-19); (2) calls from Jackson's friends seeking to bond him out the night of his arrest (*id*. at p. 234:14-20); (3) calls by Wells the following morning expressing concern about Jackson from the night before (*id*. at pp. 225:10 – 226:13); and (4) calls made as part of Defendant Wilson's post-incident investigation. (*Id*. at pp. 202:7 – 203:11; 229:20 – 230:15). On **March 24, 2022**, County Defendants confirmed, for the first time, that they have "produced all of the audio in the County's possession," which is to say, they have none of the audio recordings identified by Wilson. (Ex. 7)

Each of the calls Wilson identified involved Jackson Maes. Based on the one-year write-over period identified by Wilson, each of the calls were available when Estate served its preservation letter, and according to defense counsel, none of those calls are available now.

### B. NON-PRODUCTION OF SUICIDE REPORTS

County Defendants also objected to RFD 8 seeking documents since 2014 associated with persons on suicide watch. (Ex. 4, pp. 3-4). The County Defendants produced no documents at all and argued "[t]here is no reasonable way for this Defendant to reasonably search for such records other than attempting to review every record potentially available in the Sheriff's Department."

> There is no reasonable way for this Defendant to reasonably search for such records other than attempting to review every record potentially available in the Sheriff's Department. Such

(Ex. 4, p. 4).

On **December 30, 2021**, Estate deposed the County Defendants' records custodian to probe this contention. (Ex. 8). When asked about the functionality of the SCSO case management

software (CrimeStar), and specifically whether the CrimeStar database is searchable, the custodian responded as follows:

**Q Okay. Do you know whether or not the CrimeStar database is searchable?**
A Searchable in what way? I know that we can search by name and address -- I think name and address is all I know right off the top of my head. I've never really searched for anything but by name or address for locations.
**Q Do you know if any of the other fields that are on this document are searchable?**
A I don't know.
**Q Have you ever contacted CrimeStar to ask them?**
A No, I've never had a need to, so I never have. No.

(Ex. 8, pp. 32:25 – 33:12).

On **January 28, 2022**, in response to *Estate* contacting CrimeStar directly, County Defendants produced records associated with 5 people placed on suicide watch at the SCJ.

On **March 18, 2022**, Estate conducted a site inspection at the SCJ that included the functionality of the CrimeStar software. Upon inspection, Estate discovered the software has an additional keyword search feature built directly into the system allowing any user to search a variety of fields within the database, including the narrative field. During the inspection Estate searched the keyword "suicide" in the narrative field which revealed sixty separate incidents involving that keyword.

As set forth above, the records custodian did not disclose this feature despite direct questioning about the search functions of the CrimeStar database. As of this filing, Defendants have not produced any of the reports identified.

### C. REQUEST FOR 30(B)(6) DEPOSITION

On **March 10, 2022**, Estate served a draft 30(b)(6) notice. (Ex. 9). Estate served the notice before the County Defendants confirmed the lost audio recordings, and before Estate discovered the 60 missing CrimeStar reports. On **March 25, 2022**, the County served objections to the notice. (Ex. 10). As of this filing, Estate is still pursuing the 60 missing CrimeStar reports and the disposition of the missing audio, *i.e.*, whether the audio was passively deleted through permissive write-over of the data, whether it was manually deleted before the one-year write-over period, whether audio was saved or downloaded with the disposition unknown, or whether the audio met some other fate.

### D. REQUEST FOR EXPERT DEPOSITIONS

On **Friday**, **February 18, 2022**, Defendants disclosed 3 expert witnesses. Their correctional expert specifically opined about the substance of calls from the SCJ about Jackson Maes:

> 37. A decision was made to call the mental health provider, there was no answer.

(Ex. 11, p. 2).

Just four business days later, on **Thursday**, **February 24, 2022**, Estate first learned about the potential spoliation issue surrounding recorded lines at the SCJ. (Ex. 6, p. 1). Consistent with Fed. R. Civ. P. 1, it is accepted practice to complete fact discovery before taking expert depositions to avoid the added cost of re-deposing an expert on newly discovered evidence. Based on the

potential spoliation issues, Estate submits it was prudent, efficient, and cost effective to prioritize the unresolved evidentiary issues over the expert depositions.

## III.

## ARGUMENT AND AUTHORITIES

Under Fed. R. Civ. P. 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Movants must show the scheduling deadline cannot be met despite diligent efforts, which may be satisfied if, for example, the movants learn new information through discovery. *Birch v. Polaris Indus.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). "Rigid adherence to [a] pretrial scheduling order is not advisable." *SIL-FLO v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990). Further, total inflexibility is undesirable in the context of a motion to amend a scheduling order. *See Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).

When determining a motion to extend discovery, a court considers the following factors: (a) whether trial is imminent; (b) whether the request to extend discovery is opposed; (c) whether the non-moving party would be prejudiced; (d) whether the moving party was diligent in obtaining discovery within guidelines the court established; (e) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the court; and (f) the likelihood that the discovery will lead to relevant evidence. *See Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987); *Lehman Bros. Holdings, Inc. v. Univ. Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014). Applied here, all factors support enlarging the discovery deadline in this case as requested.

The trial in this matter has not been set. Accordingly, Estate submits the first factor is satisfied because trial is not imminent. As to the second factor, the request is opposed, but that opposition must be viewed in context: these Defendants face increased exposure and possibly

sanctions based on the non-disclosure of the suicide reports and spoliation of relevant audio recordings. As to the third factor, there is no prejudice that would accompany a 60-day extension.

The Estate has been diligent in its efforts to obtain discovery within the current guidelines, the fourth factor, by both serving written discovery and taking numerous depositions well in advance of the discovery and dispositive motion deadlines. The fifth factor, foreseeability, is also satisfied because the Estate could not anticipate either the spoliation issue or the non-production of suicide reports given the inaccurate testimony of the records custodian and the materially false assertion that "there is no reasonable way for this Defendant to reasonably search for such records other than attempting to review every record potentially available in the Sheriff's Department." (Ex. 4, p. 17). The final factor to consider, the likelihood that the discovery will lead to relevant evidence, is the primary purpose underlying this request. The Estate's Motion meets the final factor because all of the discovery requested is reasonably tailored towards advancing the merits and presenting a full and complete case to a prospective jury.

Accordingly, Estate respectfully submits that it has established good cause to extend all deadlines by sixty days. A sixty-day extension will permit the Estate to obtain relevant records and complete the remaining depositions in a meaningful way after sufficient information has been produced.

**WHEREFORE**, all premises considered, Estate respectfully requests the Court grant the motion and extend all deadlines by sixty days.

Dated this 6th day of April, 2022.

Respectfully submitted,

BRYAN & TERRILL

s/*J. Spencer Bryan*
J. Spencer Bryan, CO Bar No. 51933
333 W. Hampden, Suite 420B
Englewood, Colorado 80110
Tele/Fax: 720.923.2333
jsbryan@bryanterrill.com
*Attorney for Ms. Lieberenz and the Estate of Jackson Maes*

Respectfully, submitted

DORMER HARPRING

s/*Blaire Bayliss*
Sean M. Dormer, CO Bar No. 44962
K.C. Harpring, CO Bar No. 47760
Erik D. Moya, CO Bar No. 55074
Blaire G. Bayliss, CO Bar No. 55221
3457 Ringsby Ct., Unit 110
Denver, CO 80216
Phone: (303) 756-3812
Fax: (303) 477-7400
smd@denvertrial.com
kch@denvertrial.com
edm@denvertrial.com
*Attorneys for Ms. Lieberenz and for the Estate of Jackson Maes*