# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.    1:21-CV-00628-NYW-NRN

SARAH LIEBERENZ, Individually and as Personal Representative of THE ESTATE OF JACKSON MAES, deceased,
Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAGUACHE, COLORADO, in its official capacity; *et al.*

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [ECF 102]

## REPLY IN SUPPORT OF UNDISPUTED MATERIAL FACTS

1.  Allegations of overcrowding are irrelevant as the Jail was under capacity on the night of Maes' arrest. [Wilson, 178:17-24]. The County never admitted the Jail was inadequate to house inmates – Macias' testimony does not support Plaintiffs' ("Plfs") contention.

3.  Dispute is irrelevant. Plfs concede Macias was the jailer that evening and was responsible for monitoring the four cells and the holding tank. [Wilson, 130:6-9; Shields, 82:5-7].

5.  Plfs ignore Wilson's testimony. He stated a dispatcher need not monitor the cameras "full-time," which is the definition of a secondary duty. [Wilson, 168:16-17].

7.  Irrelevant. With both a jailer and dispatcher, the Jail was fully staffed. [Wilson, 126:21 – 127:1].

8.  The "single jailer/dispatcher" structure refers to shifts where only one person is working in the Jail. The normal structure has two employees, dispatcher and jailer. [Wilson, 123:17-18].

15. Wells' alleged "classification" of Maes is irrelevant to the Motion. With respect to Shields' interview, Plfs have consistently misrepresented the content of that interview. As Shields testified to, the interview was based on information she received *after* Maes death – she did not know, nor did she suspect, that Maes was suicidal that night. [Shields, 65:10-18].

18. Plfs only refer to Maes' conduct in the cell, most of which occurred outside Wilson's presence.

20. Plfs' rebuttal does not raise a dispute – Wilson's inquiry about detox does not change the fact that Wilson attributed Maes' conduct to a drunk person wanting attention.

22. Plfs never identify a "first" suicidal statement beyond the utterance made in Cell 1, nor do they support a "progression of thought" in Wilson's presence. It is undisputed that Wilson only ever heard one statement from Maes about self-harm. [Wilson, 185:19-24].

23-24. *See supra*, ¶ 20.

25. Wilson was not aware that Wells had even made such calls. [Wilson: 256:6-10].

26-27. Plfs again misrepresent Shields after-the-fact interview. Shields was unaware of Jackson's statements *during* her shift that evening. [Shields, 52:22 – 53:1, 62:15 – 63:1].

28. Plfs failed to read Shields' testimony. When asked whether she thought Maes was suicidal, she stated unequivocally: "no." [Shields, 66:4-6]. When asked to speculate about why someone might bang their head, she speculated that "people can just be angry and hit their head." [*Id.*, 51:21-25]. No inference of suicidality was drawn *that night* by Shields.

29-30. Plfs again misrepresent Shields after-the-fact interview.

34-36. Plfs cannot dispute the allegations in their own Complaint. [ECF 1, ¶ 132]. Maes began "hanging in his cell" at approximately 10:21:59 p.m. According to Plfs' expert, unconsciousness

would take place in 15 to 20 seconds and that such time period would start "right when his body stops moving" into the ligature. [Danielsen, 91:2-14, 93:6-19].

39-40.   Plfs do not dispute that jailers had access to outside facilities. Macias' opinion does not dispute that employees receive fourteen weeks of training. Because Shields was a new employee, she hadn't completed training. She was also not the jailer that evening. [Shields, 82:1-4].

45.   Dispute is irrelevant to the County's Motion.

48-49.   Plfs do not dispute that the audit did not mention the curtain, which is the item at issue.

## RESPONSE TO PLAINTIFFS' ADDITIONAL FACTS

1.   Irrelevant. The opinion of one person does not establish that the Jail is "inadequate."

2.   Admitted that the cited testimony shows the BOCC did inspect the jail annually.

3.   Irrelevant. The Sheriff, not the BOCC, manages the Jail. [30(b)(6) 81:11-23].

4.   Exhibit 8 is 82 pages and Plfs provide no page citations, which makes any response difficult. It is generally admitted that a desire for a new jail was expressed to the BOCC and jail conditions made operations more difficult. Any inference that the Jail failed to meet the minimum standards for housing inmates, which is unsupported, is disputed.

5-6.   Irrelevant. The Jail was fully staffed and below capacity when Maes was arrested.

7.   Admitted that there is no direct line of sight between dispatch and Cell 1.

8.   Disputed. Plfs' statement lacks context. Wilson's statement reflected a desire to have additional isolation cells, not that the Jail was insufficient to house inmates. [Wilson, 200:9-18].

9.   Disputed, as the testimony does not support Plfs' statement of fact, which is irrelevant.

10. Admit the Jail's holding tank happened to be occupied when Maes was arrested. Plfs misconstrue Warwick's testimony, who wasn't present at the Jail. Warwick indicated he would need more information to evaluate whether Maes was suicidal. [Warwick, 128:5-15].

11. Admit that Maes was in Cell 1 and Wells stated a discussion occurred between her and Wilson, but Plfs otherwise do not accurately or completely represent the cited testimony, as Wilson was referencing the possibility of detox. [Wilson, 19:3-15].

12. The temporary occupation of a single cell did not make the Jail "overcrowded," but otherwise admit the testimony speaks for itself

13. The Defendants admits Cell 1 has bars.

14. Admit Macias indicated the department was short staffed in general, not that the Jail lacked sufficient deputies that evening. Shifts at the Jail are fully staffed with one jailer and one dispatcher. And while Macias indicated the inmates in Cell 2 were "rowdy," he never indicated he could not observe all four cells in the Jail. In fact, he stated he "didn't recall" any connection between Cell 2 and Maes' death. [Macias, 192:15-22].

15-17. Disputed. Macias was the jailer and was responsible for supervising four cells. [Wilson, 130:6-9].

18. Disputed as Plfs have consistently misconstrued Shields' interview. As she testified to, the interview was based on knowledge of events after Maes' suicide. Plfs' efforts to conflate the two is not a proper litigation tactic. [Shields, 65:10-18].

19. Admitted.

20-21. Irrelevant – the Jail was fully staffed during Maes' arrest. [Wilson, 126:21 – 127:1].

22. Irrelevant and the testimony does not support the statement alleged.

23. Admitted that when asked to opine during his deposition in February 2022, Warwick indicated he believed most actions that evening were consistent with County policy.

24. Irrelevant and an improper hypothetical.

25. Admitted that 11 years prior to Maes, Granados committed suicide.

26. Admitted that the County had a privacy curtain in front of the toilet, per the Prison Rape Elimination Act. [30(b)(6), 170:11-22].

27. Disputed, as the cited testimony does not discuss what role medical professionals play at the Jail. Jailers have access to hospitals and a health clinic. They also undergo on-the-job training to assess inmate behavior, including suicidal ideation. [Wilson, 74:9 – 75:9].

28. Admit that if the Jail's tank is occupied, inmates must be housed in another cell.

29. Disputed as the County provides a fourteen-week on-the-job training program, which instructs jailers to assess the totality of the circumstances of an inmate's behavior, including the charge for which they are in the jail, their tenure in the Jail, and any statements made by the inmate, among other factors. [Wilson, 78:11 – 80:4].

30. Irrelevant. Maes was not on suicide watch, so the policy's requirements for ten-minute cell checks has no causal relation.

31. Dispute as the Jail was fully staffed. [Wilson, 126:21 – 127:1].

32. Plfs' statement is argumentative and hyperbolic. Shields testified she was unsure why she was making calls, in part because she never heard Maes make any statements of self-harm. [Shields, 61:13-16; 63:2-6; 64:1-4].

33. Admitted that Macias did not receive additional training in the two weeks prior to his separation from the County, which is irrelevant since Macias did not express a lack of training in addressing issues surrounding suicide prior to Maes' arrest.

34. For purposes of this Motion only, not disputed that Macias claims he received no training, although such statement is not accurate. [*See* Wilson, 241:22 – 242:1].

35. Irrelevant – *see supra*, ¶ 33.

36. Irrelevant as Maes was not on suicide watch. [Wilson, 275:19-24].

37. Admitted that a shift has a full-time jailer tasked with observing four cells and a tank.

38. Incorrect as a dispatcher has one secondary duty, which is to observe the cameras. [Wilson, 168:8-17].

39. Disputed as the Jail was fully staffed the evening of Maes arrest. Plfs provide no factual support for the argument that the Jail's size required more than one full-time jailer.

40. Coupled with physical rotations, admitted that cell checks were done via monitor.

41-42. Plfs cannot dispute their own Complaint, *see supra*, p. 2.

## LEGAL ARGUMENT

**A.     The condition of the Jail was constitutionally adequate (First Claim)**

Plfs provide two responses to the County's argument about the physical adequacy of the Jail, both of which miss the mark.

First, Plfs claim the County missed an argument that the characteristics of the Jail "in combination" led to a constitutional injury. [ECF 124, p. 13]. This is not so. Plfs raised concern with the County's use of prison bars, the lack of direct supervision, and the use of privacy curtains. [ECF 1, 170(a-c)]. Yet the County *has* a specific cell, the "tank," which does not have

curtains or bars. [*See* ECF 102, p. 9 (discussing the tank)]. That the tank was occupied that evening does not alter the fact that the Jail has adequate facilities.

Second, Plfs claim that County missed an argument that the risk of suicide is a "highly predictable or plainly obvious consequence" of utilizing a jail with bars and privacy curtains. Plfs omit any precedent finding a municipality deliberately indifferent because it uses bars or curtains. In any event, the County's previous argument applies with equal effect here. The County was not deliberately indifferent to a plainly obvious risk because it maintained a cell that removed those implements. It is not "plainly obvious" that housing intoxicated or suicidal inmates in a tank-style cell would lead to suicide.

Plfs also claim the County was deliberately indifferent to the Jail's conditions because the Sheriff indicated that understaffing and the aging facility were factors in Mr. Maes' suicide. [ECF 124, p. 15]. Yet this argument addresses causation, not deliberate indifference. The inability to house Maes in the tank that night does not establish the County was deliberately indifferent to a known risk that intoxicated inmates were regularly housed outside of the tank.

**B.     There is no viable claim based on the Jail's funding (Second Claim)**

With respect to funding, Plfs' response is unacceptably vague. Plfs cite general testimony that the Sheriff requested funds to hire staff and discussions were at times contentious. [ECF 124, pp. 17-18]. But deliberate indifference requires parties to dig deeper – a plaintiff must show a particular deficiency caused a specific constitutional injury and that the municipal body knew such injury was a highly likely consequence of its acts. Plfs fail to meet these requirements.

Indeed, Plfs' primary complaint is the Sheriff's request for funds to hire more staff. Yet the Jail was fully staffed during Maes' arrest and, critically, Plfs have never argued the Jail

should have been staffed by more than one jailer. Thus, even if accepted as true, any complaints related to funds for hiring staff have no causal connection to Maes' death. *See Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) ("A plaintiff can establish a direct causal link only by showing that the municipal practice was closely related to the deprivation of rights.").

Plfs also miss the mark on deliberate indifference, arguing only that "BOCC never fully funded the SCSO before 2021." [ECF 124, p. 17]. That is entirely too vague to state that the BOCC was deliberately indifferent to a known risk of suicide. Plfs ignore the precedent cited in the County's Motion that requires parties to identify a specific funding decision and tether it to a specific constitutional injury. [*See* ECF 102, p. 11]. Plfs fail to allege that the BOCC was even informed that suicide was substantially likely based on a failure to provide certain funds.[1]

## C. Plfs' failure to supervise claim is not viable. (Third Claim)

Plfs abandon all other allegations regarding a failure to supervise and focus exclusively on their new accusation that "Cell 1 presented a substantial risk of harm to suicidal inmates…" [ECF 124, p. 21]. Two fatal problems exist with this new argument. First, Plfs do not establish that deputies regularly housed suicidal inmates in Cell 1 – as opposed to the tank – much less that Sheriff Warwick was aware of such practice. Second, Maes was not classified as suicidal when at the Jail. Thus, even assuming Sheriff Warwick permitted a practice whereby he allowed deputies to house suicidal inmates in Cell 1, such practice would have no import into this case. Plfs' heavy emphasis on Granados thus has no relevance to this claim and it should be dismissed.

---

[1] This omission alone distinguishes Plaintiffs' citation to *Lopez v. LeMaster*, 172 F.3d 756, 761 (10th Cir. 1999), where the sheriff informed the county that at least one prior assault was the result of inadequate funding. *See Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018) (distinguishing *Lopez* based upon lack of prior incidents).

### D. Plfs' failure to train claim inappropriately relies solely on Macias (Fourth Claim)

Plfs focus exclusively on Macias' contention that he lacked training. [ECF 124, p. 22]. Yet Plfs never rebut the County's evidence that all deputies undergo a fourteen-week training program, which includes evaluation of potentially suicidal parties. As the U.S. Supreme Court held, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). Plfs provide no explanation on how it was "plainly obvious" that the County's training program was deficient when: (1) Plfs could not point to any other jailer who allegedly received inadequate training; (2) Plfs could not identify similar instances in which the County's training allegedly failed, and (3) the Tenth Circuit's decision in *George v. Beaver County*, 32 F.4th 1246 (10th Cir. 2022) held that almost exclusively on-the-job training was not indicative of *Monell* liability.

Plfs barely address *George*, claiming it is distinguishable because deputies attended an academy with four hours of training. [ECF 124, p. 21, n.2]. Yet this runs afoul of another tenet of *Monell* liability: "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*, 563 U.S. 51, 68 (1989). By remaining laser focused on Macias and neglecting all other aspects of the County's operations, Plfs fail to show the Sheriff was indifferent to a plainly obvious training deficiency.

### E. Staffing has no relation to the Maes incident (5th Claim)

With respect to staffing, Plfs conflate two very different staffing structures. The "single dispatch/jailer" structure refers to shifts where there is only a *single* person performing *both* roles. That must be contrasted with regular shifts, in which there is a dedicated jailer and a

dedicated dispatcher. Critically, Plfs have *never alleged*, much less supported factually, that a jail with four cells requires more than one dedicated jailer.

Plfs instead claim that Macias was "preoccupied" with other inmates and a surplus jailer "would have been available to supervise Jackson." [ECF 124, p. 25]. But under *Monell*, that incorrectly focuses solely on this incident – Plfs never expand beyond that evening to show that the jailer was regularly unable to perform all of his duties during a shift. Just the opposite, the Jail has no pattern of constitutional injury based upon an inadequate number of staff members.

Plfs then attempt to escape summary judgment by announcing a new theory: even though the video depicts Maes hanging himself at 10:22 p.m. and the testimony of their expert contradicts their assertion, Plfs claim it is possible Maes was still alive 100 minutes later, when the shift changed at midnight. This argument fails for two reasons. First, Plfs present no evidence that Maes was alive for that period of time – speculating only that Maes' hand movement was not captured on camera. But that theory is just rank speculation. Second, even assuming Maes survived until midnight, there is no evidence that the "single jailer/dispatcher structure" caused his suicide. While such structure in *general* is less preferred, there is no evidence that the overnight jailer on the *specific* night of Maes' death was unable to attend to the four cells – including at shift change, when he overlapped with Macias. Indeed, despite extensive discovery in this case, Plfs never even deposed the deputy. Thus, there is no evidence establishing causation between the single jailer/dispatcher structure and Maes' suicide.

**F.      Plfs' ratification argument is incorrect (not attached to a claim for relief)**

In a section of their Response that is untethered from any claim, Plfs argue that County policy was the "moving force" behind the response to Maes because in his deposition *two years*

later the Sheriff said his staff acted mostly within policy. [ECF 124, pp. 18-19]. Plfs incorrectly state that *J.B. v. Wash Cnty.*, 127 F.3d 919 (10th Cir. 1997) supports *Monell* liability based on such after-the-fact agreement. The key fact that established municipal liability in *J.B.* was that the final policymaker approved the actions of employees *prior to or contemporaneously* with their actions. *See id.* at 922 (noting discussion prior to officers' actions); *id.*, at 924 n.5 ("there is no question that the police officers who executed the removal order acted under the direction of [final policmakers]."). The same timeline has not and cannot be established here and courts have routinely rejected arguments that after-the-fact ratification in a deposition can establish a formal custom of the municipality. *See Estate of Valverde v. Dodge*, 2017 U.S. Dist. LEXIS 70653, at *27-28 (D. Colo. May 9, 2017) ("because the alleged ratification happened after the shooting…Denver's acceptance and praise of Dodge's conduct did not cause Valverde's injury.").

**G.     Plfs' qualified immunity analyses are fatally flawed. (6th, 7th, & 8th Claims)**

Plfs make a fundamental error consistent across all three individual capacity claims: they fail to identify any Tenth Circuit precedent clearly establishing that Wilson and Shields' conduct was unconstitutional with respect to the *specific facts of this case*. Instead, the only legal assertion made in their Response is a general notion that deliberate indifference "violates clearly established law even if prior case law does not put the officer on notice of that risk." [ECF 124, p. 26]. But even if a "detainee's rights to adequate medical assistance were clearly established, the Supreme Court has again reminded lower federal courts that 'clearly established law' should not be defined 'at a high level of generality.'" *Estate of Dixon v. Bd. of Cnty. Comm'rs*, 2017 U.S. Dist. LEXIS 59026, at *30 (D. Colo. April 18, 2017) (citing *White v. Pauly*, 137 S. Ct. 548,

552, 196 L. Ed. 2d 463 (2017)). It is "Plaintiffs' burden to establish more than a generalized principle of constitutional law….It cannot be assumed nor constructed by the court." *Id*.

Indeed, Plfs cite *not a single case* in their Response discussing the contours of any federal right in the context of suicide in a detention facility. Instead, Plfs cite the dissent in *Estate of Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1196 (10th Cir. 2022) Matheson, J., concurring in part dissenting in part), yet dissents cannot form the basis of clearly established precedent. *See Estate of Carrigan v. Park Cnty. Sheriff's Office*, 381 F. Supp. 3d 1316, 1330 (D. Colo. 2019) ("a dissenting opinion cannot possibly 'clearly establish' the existence of a constitutional violation that the majority did not recognize…"). Plfs also mention *Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008), yet *Howard* discussed constitutional standards for protecting "prisoners from violence at the hands of other prisoners" – a duty far too removed from the standards governing suicide prevention to be useful in this case.

Plfs also cannot take advantage of a weight of authority from other circuits, as none of the cases cited on page 26 of their Response address jail suicides. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1077 (10th Cir. 2015) (unauthorized high-speed driving); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (sexual assault of inmate).

Plfs recognize the need to produce such precedent, conceding "severe intoxication is not sufficient by itself to establish vulnerability to suicide…" [Response. P. 28].[2] Plfs nonetheless try to claim that intoxication plus Maes' statement and action was sufficient to establish deliberate indifference. Yet they cite no clearly established case law demonstrating that intoxication plus a

---

[2] Plfs acknowledged the same burden in their motion for additional pages, asserting that "Plaintiffs must engage in detailed factual and legal analysis on three separate assertions of qualified immunity…" [ECF 111, ¶ 3]. It is unclear why they abandoned that duty here.

statement indicative of potential self-harm would put every reasonable deputy on notice that failure to act would constitute deliberate indifference. Indeed, this very case proves that another reasonable inference was reached – Wilson inquired whether Maes needed something more done for him, *i.e., detox*, not a form of higher medical care. There is no case law cited by Plfs that would put Wilson on notice that his inference of Maes' potentially requiring detox was constitutionally insufficient. The same rings true of Plfs' supervisory claim. If Wilson had not reached an inference that Maes was suicidal, and had no knowledge of a pattern of employees showing deliberate indifference to suicidal tendencies, then prevailing Tenth Circuit precedent fails to clearly establish that he would be liable under such novel circumstances. *George v. Beaver Cnty.*, 32 F.4th 1246, at *19-21 (10th Cir. 2022). Plfs provide no case law to the contrary.

Plfs' argument with respect to Shields fares even worse. Plfs acknowledge that she was distracted and burdened by "task saturation." [ECF 124, p. 30]. Plfs nonetheless claim that Shields must have reached an inference that Maes was a suicide risk because she called mental health. Yet the evidence is clear that Shields was not aware of what kind of assistance she was seeking for Maes; indeed, she never even directly interacted with Maes, nor did she see or overhear any of his behaviors and statements in Cell 1. Plfs failed to present case law clearly establishing that every reasonable *dispatcher* would know that it was constitutionally insufficient to rely on the jailer to monitor and supervise inmates under these circumstances. Plfs instead simply refer back to the cases cited in previous sections of their Response, which is inadequate to overcome the heavy two-part burden of qualified immunity.

Respectfully submitted this 25th day of August, 2022.

                                              *s/Nick Poppe*
                                              Marni Nathan Kloster
                                              Nicholas C. Poppe
                                              NATHAN DUMM & MAYER P.C.
                                              7900 E. Union Avenue, Suite 600
                                              Denver, CO  80237-2776
                                              Phone Number: (303) 691-3737
                                              Fax: (303) 757-5106
                                              Attorneys for County Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2022, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [ECF 102]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:.

J. Spencer Bryan
Bryan & Terrill Law, PLLC
333 W. Hampden, Suite 420B,
Englewood, Colorado 80110
jsbryan@bryanterrill.com
*Attorney for Ms. Lieberenz and for the Estate of Jackson Maes*

Sean M. Dormer, #44962
Blaire G. Bayliss, #55221
Dormer Harpring, LLC
3457 Ringsby Ct., Unit 110
Denver, CO 80216
smd@denvertrial.com
bgb@denvertrial.com
*Attorney for Ms. Lieberenz and for the Estate of Jackson Maes*

Leslie L. Schluter
Sophia A. Fernald
DAGNER | SCHLUTER | WERBER, LLC
8400 East Prentice, Suite 1401
lschluter@lawincolorado.com
*Attorneys for Defendant Elke Wells*

Andrew R. McLetchie
Eden R. Rolland
FOWLER, SCHIMBERG, FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
a_mcletchie@fsf-law.com
E_rolland@fsf-law.com
*Attorneys for Defendant Miguel Macias*

James D. Murdock II (Bar No. 47527)
John T. Osgood (Bar No. 34999)
1670 Broadway, Suite 900
Denver, CO 80202
Jmurdock@talawfirm.com
Josgood@talawfirm.com
*Attorney for Defendants Board of County Commissioners of the County of Saguache, Saguache County Sheriff's Office, Sheriff Dan Warwick, Kenneth Wilson, and Shelby Shields*

> *s/Sarah Hornbarger*
> NATHAN DUMM & MAYER P.C.