**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-00628-NYW-NRN

SARAH LIEBERENZ, Individually and as Personal
Representative of THE ESTATE OF JACKSON MAES,
deceased,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY
OF SAGUACHE COLORADO, in its official capacity,
SAGUACHE COUNTY SHERIFF'S OFFICE, a governmental entity,
DAN WARWICK, SHERIFF OF SAGUACHE COUNTY, in his official capacity,
KENNETH WILSON, in his individual capacity,
ELKE WELLS, in her individual capacity,
MIGUEL MACIAS, in his individual capacity, and
SHELBY SHIELDS, in her individual capacity,

    Defendants.

---

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a "Motion for Partial Summary Judgment on Claims and Damages Asserted by Plaintiff[s] Individually and Certain Damages by Plaintiff[s'] Estate, Pursuant to Fed. R. Civ. P. 56," (the "Motion" or "Motion for Partial Summary Judgment") filed by Defendant Miguel Macias ("Defendant" or "Mr. Macias"). [Doc. 101, filed June 30, 2022].[1] Plaintiffs Sarah Lieberenz ("Plaintiff Lieberenz" or "Ms. Lieberenz") and the Estate of Jackson Maes (the "Estate," and, collectively, "Plaintiffs") filed a Response in opposition, [Doc. 112, filed August 4, 2022], and Defendant followed with a Reply [Doc. 134, filed August 18, 2022]. Upon

---

[1] For ease of reference, this Court cites to the docket number and the page numbers assigned by the District of Colorado's Electronic Case Filing ("ECF") system.

consideration of the briefing, the Court concludes that oral argument will not materially assist in the resolution of the Motion. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Partial Summary Judgment.

## BACKGROUND[2]

### I. Factual Background

The following facts are drawn from the record in this case and are undisputed unless otherwise noted. This action arises out of the death of Mr. Jackson Maes ("Mr. Maes"), an individual who committed suicide while incarcerated at the Saguache County Jail ("SCJ") in Saguache, Colorado on November 16, 2019. *See* [Doc. 1 at ¶¶ 1, 124, 131; Doc. 45 at ¶¶ 1–2]. He was placed in a cell at the SCJ following his earlier arrest on a warrant for failure to appear at a hearing; he appeared heavily intoxicated at the time. [Doc. 1 at ¶¶ 43, 47; Doc. 45 at ¶¶ 5, 7].

Defendant was employed as a Deputy by the Saguache County Sherriff's Office in October and November of 2019. [Doc. 45 at ¶ 3]. On November 16, 2019, he was working at the SCJ. [*Id.* at ¶ 23]. At approximately 9:57 p.m., Defendant—along with other jail employees—observed that Mr. Maes was banging his head against the wall of his cell through the use of video surveillance. [*Id.* at ¶ 19; Doc. 1 at ¶ 50].[3] Defendant entered the cell block, and alerted several other defendants that Mr. Maes was hitting his head. [Doc. 45 at ¶ 19; Doc. 1 at ¶ 52]. Mr. Maes stated that he was "trying to kill [him]self right now," and either Defendant or another jail

---

[2] While the Complaint [Doc. 1], contains an extensive set of facts related to a number of named Defendants, the Background set forth in this Memorandum Opinion and Order focuses upon Mr. Macias and the single claim—Count Eight—raised against him.

[3] Citations to paragraph 19 of Defendant's Answer refer to the fact that he believes "the video recordings depict what they depict," and only "denies any allegations inconsistent with the same." [Doc. 45 at ¶ 19]. The Court construes this statement as accepting as true certain allegations depicted by the video surveillance.

employee responded, "[y]ou're trying to kill yourself right now?" [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 53–54].

After Defendant and the other jail employees left the cell block, video surveillance showed that Mr. Maes was again striking his head on the wall of his cell. [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 62–63]. Mr. Macias returned to the cell block and warned Mr. Maes that he would injure himself if he continued to hit his head. [Doc. 45 at ¶ 19; Doc. 1 at ¶ 63]. Mr. Maes continued striking his head against his cell wall, with Mr. Macias cautioning him not to "do that" and that it was "not good." [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 65–68]. Defendant asked Mr. Maes for his name, to which Mr. Maes asked Defendant for his name. [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 70–71]. Defendant responded "Deputy Macias." [Doc. 45 at ¶ 19; Doc. 1 at ¶ 72]. Mr. Maes continued to strike his head against the wall, and Defendant cautioned "Don't do that, come on . . . Dude, you'll have a really bad headache if you do that." [Doc. 45 at ¶ 19; Doc. 1 at ¶ 77]. Defendant and Mr. Maes began engaging in a conversation, though Mr. Maes continued to hit his head. [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 78–79]. Defendant offered to retrieve juice for Mr. Maes if he would stop striking his head; Mr. Maes responded that he would not "try to kill [him]self anymore" if he received the juice. [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 80–81]. Defendant asked Mr. Maes to "promise" that he would not continue to hit his head; Mr. Maes responded that he would, but warned that if Defendant did not bring him juice that he would "have to . . . deal with a . . . dead person." [Doc. 45 at ¶ 19; Doc. 1 at ¶ 84]. Defendant left the cell block and discussed the need to call a mental health provider with two other defendants in this matter, Elke Wells and Shelby Shields. [Doc. 45 at ¶ 19; Doc. 1 at ¶ 94]. The mental health provider was contacted. [Doc. 45 at ¶ 21].

At approximately 10:06 p.m., Defendant returned to Mr. Maes with grape juice and crackers. [*Id.* at ¶ 19; Doc. 1 at ¶¶ 100–04]. Mr. Maes inquired about his ability to leave the jail

3

or speak with others over the phone; Defendant answered Mr. Maes's questions, advised him to "sober up a little," and asked him to "lemme know if you need anything, ok?" [Doc. 45 at ¶ 19; Doc. 1 at ¶¶ 105–114].

Video surveillance footage reveals that, at approximately 10:21 p.m., Mr. Maes used the privacy curtain from his cell to fashion a noose to hang himself. [Doc. 45 at ¶ 19; Doc. 1 at ¶ 30]. Plaintiff alleges that Defendant recorded false sight checks of the cell block at 11:00 p.m. and midnight, though Defendant disputes these allegations. *Compare* [Doc. 1 at ¶¶ 146–149] *with* [Doc. 45 at ¶ 20]. Defendant's employment with the Saguache County Sherriff's Office was subsequently terminated on or around November 17, 2019. [Doc. 45 at ¶ 25].

## II.   Procedural Background

Ms. Lieberenz alleges that she is Mr. Maes's biological mother and the personal representative of his Estate. [Doc. 1 at ¶ 6]. She brought suit in her individual capacity and on behalf of Mr. Maes's Estate against Defendants the Board of County Commissioners of Saguache, Colorado, the Saguache County Sherriff's Office, Dan Warwick, Kenneth Wilson, Elke Wells, Mr. Macias, and Shelby Shields on March 3, 2021. [*Id.* at 1].

Plaintiffs assert eleven claims, though Mr. Macias is implicated solely in Count Eight of the Complaint. Count Eight alleges a violation of Mr. Maes's constitutional rights pursuant to 42 § U.S.C. 1983 against Mr. Macias in his individual capacity. [*Id.* at ¶¶ 198–99]. Specifically, Plaintiffs claim that Mr. Macias exhibited deliberate indifference to Mr. Maes's welfare despite actual knowledge that Mr. Maes had communicated suicidal ideation while extremely intoxicated. [*Id.* at ¶ 199]. Plaintiffs argue that Mr. Macias's failure to act on his knowledge of Mr. Maes's suicidal ideation was the direct and proximate cause of the injuries and damages suffered by Ms.

4

Lieberenz and by the Estate. [*Id.*]. With this background in mind, the Court turns to the legal standard that will govern the resolution of this matter.

## LEGAL STANDARD

The Court may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put differently, the Court's function at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Of course, the bar on weighing evidence does not absolve a nonmoving party from the need to offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Such a showing must consist of more than a "scintilla of evidence." *Id.* at 252. That is, conclusory statements based on speculation, conjecture, or subjective belief are insufficient to survive summary judgment. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Whether a fact is "material" depends on whether it pertains to an element of a claim or a defense; a dispute is "genuine" if the evidence is so contradictory that a reasonable jury could return a verdict for either party. *See Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In reviewing a motion for summary judgment, this Court views all evidence in the light most favorable to the non-moving party. *See, e.g., Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

5

2002). That said, the Court is not required to—and will not—make unreasonable inferences in favor of that party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). It is this legal framework that will govern the Court's consideration of Defendant's Motion.

## ANALYSIS

Defendant advances two principal arguments in his Motion for Summary Judgment: first, that Plaintiffs—and Ms. Lieberenz specifically—are not permitted to raise individual claims under § 1983, and second, that summary judgment is warranted for any damages sought by the Estate that go beyond those outlined in *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990). The Court addresses both contentions in turn.

### I. Ms. Lieberenz's Individual Claim[4]

First, Defendant argues that summary judgment is warranted with respect to any claim that Ms. Lieberenz raises in her individual capacity. [Doc. 101 at 4–9]. As an initial matter, the Court notes that Plaintiffs do not identify a particular constitutional provision at issue in Count Eight. [Doc. 1 at ¶¶ 196-97]. Inasmuch as § 1983 "does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere," *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995), the Court looks to the entire Complaint to determine the specific constitutional violation alleged. Earlier in the Complaint, Plaintiffs state that "[t]his is an action under Title 42, Section 1983 of the United States Code for violations of the Fourteenth Amendment to the United States Constitution" for a variety of allegations, which appear to capture all except those raised under state law. [Doc. 1 at ¶ 4].

---

[4] Defendants the Board of County Commissioners, Saguache County Sheriff's Office, Dan Warwick in his official capacity of Sheriff of Saguache County, Kenneth Wilson, and Shelby Shields (collectively, "County Defendants") filed a Joinder of Macias's Motion for Partial Summary Judgment on Claims and Damages Asserted by Plaintiff Individually ("County Defendants' Joinder") [Doc. 103, filed June 30, 2021]. Defendant Elke Wells ("Defendant Wells") also joined in the instant Motion. [Doc. 105, filed June 30, 2022].

Thus, the Court construes Plaintiffs' claim against Defendant in his individual capacity as one raised under the Fourteenth Amendment's due process clause. *See Barrie v. Grand Cnty.*, 119 F.3d 862, 867 (10th Cir. 1997) (observing that "claims based on jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody," and that right arises under the Fourteenth Amendment for pretrial detainees).

***Section 1983.*** The Court thus considers the relief available to Ms. Lieberenz as an individual in the context of a § 1983 action for a violation of the Fourteenth Amendment's due process clause. In *Berry*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that the remedy in a § 1983 case predicated on an individual's death "should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'" *Berry*, 900 F.2d at 1506–07. Plaintiffs concede that Defendant is correct on this point, while maintaining that "the federal rule is wrong." [Doc. 112 at 3–4 (conceding that the Court cannot reconsider binding Tenth Circuit precedent regarding the availability of individual § 1983 damages for Ms. Lieberenz)]; *see, e.g.*, *Tuefel v. United States*, 5 F.3d 547, 1993 WL 345530, at *2 (10th Cir. 1993) (unpublished table decision); *Bridges v. Wilson*, No. 15-cv-00126-GKF-JFJ, 2019 WL 11589719, at *3 (N.D. Okla. July 2, 2019) ("Thus, Ms. Bridges is limited to the federal remedies set forth in *Berry*—specifically, damages to Mr. Bridges. Neither she individually nor the children may recover for their own loss consortium and have no claims for damages."); *Roemer v. Carochi*, No. 14-cv-01655-PAB-NYW, 2015 WL 5728769, at *1 n.2 (D. Colo. Sept. 29, 2015) (citing *Berry* for the proposition that the proper remedy in § 1983 death cases is a "survival action, brought by the estate of the deceased victim, and considering the estate the sole plaintiff); *Wilson ex rel. Wilson v. City of Lafayette*, Nos. 07-cv-01844-PAB-KLM, 07-cv-02248-PAB-BNB, 2010 WL 1380253, at *3 (D. Colo. Mar. 31, 2010) (noting that wrongful

7

death claim was not cognizable under § 1983 and that the correct remedy was "a survival action, brought by the estate of the deceased victim"). Irrespective of Plaintiffs' opinion that *Berry* was incorrectly decided, they cite no authority—and this Court knows of none—that would permit the Court to simply disregard binding Circuit law.

***Wrongful Death.*** Plaintiffs further argue that they have implicitly raised claims under the Colorado Wrongful Death Act, Colo. Rev. Stat. §§ 13-21-201 *et seq.*[5] [Doc. 112 at 4–5]. Their argument is that "Colorado wrongful death claims are not distinct legal theories," and that Colorado law was implicitly raised by their § 1983 claims. [*Id.*]. Respectfully, this argument also falls short. As Plaintiffs note, they did not plead any claim under the Colorado Wrongful Death Act. [*Id.* at 5–6]. It is clear that a state wrongful death action is distinct from, and not subsumed by, an action arising under § 1983 resulting from a jail death. *See, e.g.*, *Berry*, 900 F.2d at 1507 ("The state wrongful death actions are not foreclosed by this approach; they remain as pendent state claims. But, of course, there can be no duplication of recovery."). Relevant here, Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint must contain (1) a short and plain statement of the grounds for the Court's jurisdiction; (2) a short and plain statement of any claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). One of the purposes of Rule 8's pleading requirements is to provide an opposing party fair notice of the basis for the claims against it so it may respond. *See Monument Builders*

---

[5] The Court notes that the Scheduling Order provides that the deadline for Joinder of Parties and Amendment of Pleadings was August 15, 2021. [Doc. 54 at 12]. No cause of action based on Colorado's wrongful death statute was asserted by that date. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (citation omitted). It is unclear that Plaintiffs could establish the requisite diligence to allow amendment at this late date, because "[i]f the plaintiff knew of the underlying conduct but simply failed to raise tort claims, [] the claims are barred." *Id.* Plaintiffs appear to admit as much in arguing that "[t]his case has always been a wrongful death case." [Doc. 112 at 6].

8

*of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989). Nowhere in the Complaint do Plaintiffs mention the Colorado Wrongful Death Act (or even the words "wrongful death"), *see generally* [Doc. 1], nor have Plaintiffs mentioned the law prior to their Response to Mr. Macias's Motion, [Doc. 112 at 4–6].

Plaintiffs have not cited any authority—and the Court has been able to independently locate any—to support the proposition that courts in this District may read state law claims into complaints where they are not pleaded. Indeed, as Defendant points out, Plaintiffs' eleventh claim—one for negligent supervision raised under Colo. Rev. Stat. § 24-10-106(1)(B)—is a state law claim pleaded separately from Plaintiffs' first ten § 1983 claims. Plaintiffs were therefore aware of Rule 8's pleading requirements, and despite arguing that "[t]his case has always been a wrongful death case," the absence of a cause of action for wrongful death in the Complaint indicates otherwise. *See* [Doc. 112 at 6]. Furthermore, Plaintiffs have been represented by counsel since the inception of this action, and thus, are not entitled to any liberal reading of the Complaint. *Cf. Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings liberally, the same courtesy need not be extended to licensed attorneys." (quotation omitted)). Accordingly, summary judgment in favor of Defendant Macias, the County Defendants, and Defendant Wells is appropriate insofar as Counts One through Ten assert any cause of action or damages suffered by Ms. Lieberenz as an individual.

## II. Limits to the Estate's Damages Claims

Mr. Macias next argues that even the claim brought by the Estate is limited in terms of recoverable damages. [Doc. 101 at 9–11]. Defendant relies upon *Berry* to argue that damages available in a survival action raised under § 1983 are limited to "medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life

had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions." [*Id.* at 9 (quoting *Berry*, 900 F.2d at 1506–07)]. He also argues that Plaintiffs have only disclosed "(a) $3,429.86 in medical and burial expenses, and (b) a claim . . . for Jackson Maes'[s] pain and suffering before death." [*Id*. at 10]. Defendant argues that the Court should enter summary judgment on the following damages alleged by Plaintiffs:

| Damages Claim | Amount |
|---|---|
| Lost Wages | To be determined by expert |
| Loss of Enjoyment of Life/Loss of Life by Mr. Maes | $20,000,000 - $1,102,288,320 |
| Loss of Constitutional Rights by Mr. Maes | $4,500,000 - $30,000,000 |
| Loss of Mr. Maes's Companionship and Affection | $20,000,000 - $767,376,000 |
| Grief, Metal Pain, Anguish, and Emotional Distress | $20,000,000 - $767,376,000 |
| Impairment of Ms. Lieberenz's Quality of Life | $6,937,920 - $150,000,000 |

*See* [Doc. 134 at 10].[6]

Plaintiffs disagree, and claim (1) that *Berry* permits damages for a victim's loss of consortium and (2) that *Berry* lacks limiting language, and that the Tenth Circuit's express "failure" to permit plaintiffs to seek "hedonic" damages following a death does not mean that damages are limited to those outlined in *Berry.* [Doc. 112 at 8]. Respectfully, the Court finds that neither Party is entirely correct. As noted *supra*, in *Berry* the Tenth Circuit concluded that the remedy for § 1983 death cases "should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's *express statement that the liability is 'to the party injured.*'" *Berry*, 900 F.2d at 1506–07 (emphasis added).

***Loss of Consortium to Ms. Lieberenz.*** Loss of consortium *to the victim* is included among the compensatory damages outlined in *Berry. Id.* at 1507. But nothing suggests that the Estate

---

[6] In "Plaintiff's Fifth Supplemental F.R.C.P. 26(A)(1) Disclosures," Plaintiffs outline over $2.9 billion in damages on the high end of their estimates. [Doc. 101-2 at 3].

10

may obtain damages arising out of *Ms. Lieberenz's* loss of consortium arising from Mr. Maes's death.  [Doc. 112 at 9 ("If Mr. Macias broke a pedestrian's legs while off-duty, he would be required to pay damages for . . . his victim's spouse's loss of consortium.  But he would have the Court hold that, if he kills someone with his badge on, he avoids [that] category[y] of damages altogether.")].  *See, e.g.*, *Winton v. Bd. of Comm'rs of Tulsa Cnty.*, 88 F. Supp. 2d 1247, 1256 (N.D. Okla. 2000) (holding that a spouse may not recover any damages under § 1983 for her own loss of consortium).  Similarly, as discussed above, the Court agrees with Defendant that any damages claimed for injury to Ms. Lieberenz are subject to summary judgment in Defendant's favor, such as: (1) loss of Mr. Maes's companionship and affection; (2) Ms. Lieberenz's grief, mental pain, anguish, and emotional distress; and (3) impairment of Ms. Lieberenz's quality of life.  *See* [Doc. 134 at 10].

*Hedonic Damages.*  Second, Plaintiffs argue that certain "hedonic" damages upon which Defendant seeks summary judgment remain available under *Berry*.  Specifically, Plaintiffs rely heavily on the "would include" language from *Berry* and argue that this does not set a ceiling on damages a plaintiff may seek under § 1983.  [Doc. 112 at 7–8].  Defendant counters by arguing that the Tenth Circuit has elucidated two categories of damages that available under § 1983 following an individual's death: (1) punitive damages, in appropriate cases, and (2) a specific set of compensatory damages.  900 F.2d at 1507.  Defendant argues that the *Berry* court set out an exhaustive list of remedies and that any other non-economic damages are not recoverable under § 1983.  [Doc. 101 at 9-10; Doc. 134 at 8-10].

Respectfully, the Court believes that Defendant's readings of § 1983 and the Tenth Circuit's holding in *Berry* are too limited.  The Tenth Circuit has only briefly passed on "'hedonic' or 'loss of enjoyment of life'" damages, but where it has done so it has made clear that "[t]he

11

concept of hedonic damages is premised on what we take to be the *rather noncontroversial* assumption that the value of an individual's life exceeds the sum of that individual's economic productivity." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (emphasis added); *see also City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 580 n.2 (10th Cir. 1998) ("Hedonic damages covers the loss of the value of life itself."). While the Tenth Circuit has not explicitly addressed the availability of hedonic damages—that is, those related to the loss of enjoyment of life—under § 1983 in *Berry* or any other case, district "[c]ourts that have addressed the issue of hedonic damages in § 1983 death cases have interpreted *Berry* as permitting recovery of such damages." *Estate of Smart v. Chaffee*, No. 14-2111-JPO, 2020 WL 7643505, at *4 n.24 (D. Kan. Dec. 23, 2020); *Millward v. Bd. of Cty. Comm'rs*, No. 17-cv-0117, 2018 WL 9371674, at *4 (D. Wyo. Oct. 19, 2018) ("[H]edonic damages are recoverable and therefore testimony regarding the concept of hedonic damages is relevant under [§ 1983 claims]."); *Fancher v. Barrientos*, No. 2:11-cv-00118-JAP-LAM, 2015 WL 11142939, at *2 n.4 & *3 (D.N.M. July 1, 2015) ("Hedonic damages are recoverable in § 1983 wrongful death cases."). *See also Collado v. City of New York*, 396 F. Supp. 3d 265, 279 (S.D.N.Y. 2019) (citing *Berry* with approval in allowing recovery of hedonic damages on behalf of decedent fatally shot by police officer and finding that "[a] holding that § 1983 does not allow the recovery of loss-of-life damages where the unconstitutional conduct of a government official results in death would be inconsistent with the goals of the statute"). The Court finds these cases, together with *Berry*'s non-exhaustive language, persuasive. As such, the Court notes that the following categories of damages claimed by the Estate are not appropriate for summary judgment: (1) funeral expenses; (2) Mr. Maes's mental pain, anguish, and emotional distress; (3) Mr. Maes's physical pain and suffering; (4) Mr. Maes's loss of enjoyment of life; and (5) Mr. Maes's loss of life.

### III. Dismissal of Ms. Lieberenz as an Individual Plaintiff

Finally, the Court addresses Defendant's request to dismiss Ms. Lieberenz, as an individual, from this action. [Doc. 101 at 11-12]. The Court declines to do so on Defendant's instant Motion. Even if she is not a proper party to any of Plaintiffs' § 1983 claims, Count Eleven alleges negligent supervision under Colorado state law. *See* Colo. Rev. Stat. § 24-10-106(1)(b) (waiving sovereign immunity with respect to the operation of, *inter alia*, any "correctional facility . . . or jail"). Defendant is not named as part of Count Eleven, the County Defendants make no separate argument with respect to dismissal of Ms. Lieberenz as an individual, *see* [Doc. 103], and Plaintiffs do not address the dismissal of Ms. Lieberenz as an individual as a distinct issue. [Doc. 112]. This Court respectfully declines to determine the issue of Ms. Lieberenz's ability to raise such a claim in her own capacity without substantive briefing from the Parties.

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) The "Motion for Partial Summary Judgment on Claims and Damages Asserted by Plaintiff[s] Individually and Certain Damages by Plaintiff[s'] Estate, Pursuant to Fed. R. Civ. P. 56," filed by Defendant Miguel Macias, [Doc. 101], is **GRANTED IN PART** insofar as Counts One through Ten assert any cause of action or damages suffered by Ms. Lieberenz as an individual, and **DENIED IN PART,** with respect to any cause of action or damages suffered by the Estate of Mr. Maes based on (1) funeral expenses; (2) Mr. Maes's mental pain, anguish, and emotional distress; (3) Mr. Maes's physical pain and suffering; (4) Mr. Maes's loss of enjoyment of life; and (5) Mr. Maes's loss of life; and

(2) No later than **December 9, 2022**, Plaintiffs shall **SHOW CAUSE** as to why Plaintiff Sarah Lieberenz should not be dismissed in her individual capacity. To the extent that

13

they seek to address arguments made in Plaintiffs' Response, Defendant may file a Response no later than **December 16, 2022**.

DATED:  November 30, 2022                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

14