IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 1:21-cv-00628-NYW-NRN

SARAH LIEBERENZ, Individually and as Personal Representative of THE ESTATE OF JACKSON MAES, deceased,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAGUACHE COLORADO, in its official capacity;
SAGUACHE COUNTY SHERIFF'S OFFICE, a governmental entity;
DAN WARWICK, SHERIFF OF SAGUACHE COUNTY, in his official capacity;
KENNETH H. WILSON, in his individual capacity;
ELKE WELLS, in her individual capacity;
MIGUEL MACIAS, in his individual capacity;
SHELBY SHIELDS, in her individual capacity,

    Defendants.

## ORDER DENYING MOTION FOR SANCTIONS

This matter is before the Court on the Motion for Sanctions for Spoliation of Evidence ("Motion" or "Motion for Sanctions") filed by Plaintiffs Sarah Lieberenz, individually ("Ms. Lieberenz") and as representative of the Estate of Jackson Maes ("the Estate," and collectively with Ms. Lieberenz, "Plaintiffs"), [Doc. 128, filed August 11, 2022]. The Motion for Sanctions is directed at a subset of the defendants in this action: Defendant Saguache County Sheriff's Office ("the SCSO"); Defendant Dan Warwick, in his official capacity as Sheriff of Saguache County ("Defendant Warwick" or "Sheriff Warwick"); and Kenneth Wilson, in his official capacity ("Defendant Wilson") (collectively with the SCSO and Defendant Warwick, "County

Defendants").[1]  The County Defendants have responded [Doc. 153]; and Plaintiffs have replied. [Doc. 153].  This Court concludes that oral argument would not materially assist in the resolution of this instant Motion.  Based on the record before the Court, Plaintiffs' Motion for Sanctions is respectfully **DENIED**.

## BACKGROUND

The following facts are drawn from the Complaint in this action, and the Motion for Sanctions.  This case arises out of the death of Jackson Maes ("Mr. Maes"), a twenty-seven-year-old individual who committed suicide while incarcerated at the Saguache County Jail in Saguache, Colorado on November 16, 2019.  [Doc. 1 at ¶¶ 1, 124, 131].  That evening, Mr. Jackson was arrested by Defendant Wells for an outstanding misdemeanor warrant for failure to appear at a hearing.  [*Id.* at ¶¶ 40, 42–43].  Defendant Wells found that Mr. Maes was intoxicated, and "could barely walk without falling down."  [*Id.* at ¶ 42].  Following the arrest, Defendant Wells transported Mr. Maes to the Saguache County Jail ("SCJ").  [*Id.* at ¶ 45].

Mr. Maes was placed in a holding cell at approximately 9:45 p.m.  [*Id.* at ¶ 49].  Less than fifteen minutes later, Defendants Wells, Wilson, Macias, and Shields observed that Mr. Maes had begun "banging his head on the wall of the cell" on the SCJ's video surveillance system. [*Id.* at ¶ 50].  Defendants Wilson and Macias then entered the area of the cell.  [*Id.* at ¶ 21].  Mr. Maes informed both Defendants Wilson and Macias that "I'm trying to kill myself right now."  [*Id.* at ¶ 22].  Defendant Wilson responded by asking "You're trying to kill yourself right now?"  [*Id.* at ¶ 23].  Defendants then left the area.  [*Id.* at ¶ 60].  Mr. Maes continued banging his head against the wall, and Defendant Macias returned and advised him repeatedly to

---

[1] In other filings, "County Defendants" also include Defendants the Board of County Commissioners of the County of Saguache Colorado ("Board of County Commissioners") and Shelby Shields ("Defendant Shields").  Plaintiffs do not seek sanctions against these two other Defendants in this instant Motion, but in the recitation of the background facts, these additional Defendants are included in the term "County Defendants."

stop doing so because "that's not good." [*Id.* at ¶¶ 63–69]. Defendant Macias proceeded to talk with Mr. Maes, in an attempt to calm him down and prevent him from injuring his head. [*Id.* at ¶¶ 72–83]. Eventually, Mr. Maes agreed that he would stop hitting his head if Defendant Macias would retrieve juice for him, and promised "yeah, no, yeah I won't [hit my head again]—I won't try to kill myself, anymore, haha." [*Id.* at ¶ 80–81].

After Defendant Macias left the cell area to obtain juice, he and Defendants Wells and Shields decided to call outside vendors to obtain care for Mr. Maes. [*Id.* at ¶ 95]. No one answered, and no message was left. [*Id.*; Doc. 128 at ¶ 5]. In addition, no one called 911 or an ambulance. [Doc. 1 at ¶ 95]. Defendant Macias returned to the cell at 10:06 p.m. to deliver juice and crackers to Mr. Maes. [*Id.* at ¶ 100–01]. While portions of the subsequent conversation between Mr. Maes and Defendant Macias are inaudible, it appears they discussed the process of "bonding out" of the SCJ and the timeline for doing so. [*Id.* at ¶¶ 102–115]. Defendant Macias left the cell block at 10:08. [*Id.* at ¶ 116].

After departing, Defendant Macias conversed further with Defendants Wells and Shields in the booking area. [*Id.* at ¶ 119]. None of these individuals performed 15-minute suicide checks. [*Id.* at ¶ 137]. Tragically, at approximately 10:20 p.m., video surveillance shows that Mr. Maes began tying a portion of the privacy curtain from his cell around his neck. [*Id.* at ¶ 120]. For approximately two minutes, Mr. Maes fixed the curtain into a position that would permit him to hang himself. [*Id.* at ¶¶ 120–132]. At approximately 10:22 p.m., Mr. Maes removed his legs from the bunk that he had been standing on; he subsequently died, and his body was discovered approximately eight hours later. [*Id.* at ¶¶ 131, 139]. While Defendant Macias recorded sight checks at 11:00 p.m. and 12:00 midnight, those checks were not conducted. [*Id.* at ¶¶ 146, 148].

Ms. Lieberenz is Mr. Maes's biological mother and the personal representative of his Estate. [Doc. 1 at 1, ¶ 6]. Plaintiffs initiated this action on March 3, 2021, asserting ten constitutional claims arising from alleged violations of the Fourteenth Amendment [Doc. 1 at ¶ 4] and one state law claim articulated as follows:[2] (1) Inadequate Physical Plant – Conditions of Confinement (42 U.S.C. § 1983) against the Board of County Commissioners [*id.* at ¶¶ 167–72]; (2) Inadequate Funding – Conditions of Confinement (42 U.S.C. § 1983) against the Board of County Commissioners [*id.* at ¶¶ 173–77]; (3) Inadequate Supervision – Policy or Practice (42 U.S.C. § 1983) against Defendant Warwick in his official capacity [*id.* at ¶¶ 178–82]; (4) Inadequate Training – Policy or Practice (42 U.S.C. § 1983) against Defendant Warwick in his official capacity [*id.* at ¶¶ 183–188]; (5) Inadequate Staffing – Policy or Practice (42 U.S.C. § 1983) against Defendant Warwick in his official capacity [*id.* at ¶¶ 189–193]; (6) Supervisory Liability (42 U.S.C. § 1983); raised against Defendant Wilson in his individual capacity [*id.* at ¶¶ 194–95]; (7) Individual Liability (42 U.S.C. § 1983) against Defendant Wilson in his individual capacity [*id.* at ¶¶ 196–97]; (8) Individual Liability (42 U.S.C. § 1983) against Defendant Macias in his individual capacity [*id.* at ¶¶ 198–99]; (9) Individual Liability (42 U.S.C. § 1983) against Defendant Wells in her individual capacity [*id.* at ¶¶ 200–01]; (10) Individual Liability (42 U.S.C. § 1983) against Defendant Shields in her individual capacity [*id.* at ¶¶ 202–03]; and (11) Negligent Supervision of a Jail (C.R.S. § 24-10-106(1)(B)) raised against the Board of County Commissioners, SCSO, and Defendant Warwick in his official capacity [*id.* at ¶¶ 204–208]. The County Defendants and Defendant Wells answered on April 30, 2022, and

---

[2] In a Memorandum Opinion and Order entered on November 30, 2022, the Court granted Defendant Macias' Partial Motion for Summary Judgment insofar as Counts One through Ten – that is, Plaintiffs' constitutional claims – asserted any causes of action or damages suffered by Ms. Lieberenz as an individual. [Doc. 188].

4

amended that Answer on July 15, 2021.  [Doc. 40; Doc. 41; Doc. 56].  Defendant Macias answered on May 20, 2022.  [Doc. 45].

The Parties then appeared before the Honorable N. Reid Neureiter on July 1, 2021, and a Scheduling Order was entered.  [Doc. 54].  During discovery, Plaintiffs ascertained that Defendant Shields called San Luis Valley Behavioral Health to seek medical care for Mr. Maes.  [Doc. 128-3 at 22:03:04 and 22:03:52; Doc. 126 at 3); Doc. 128-7 at 188:23-25; Doc. 128-8 at 48:17-49:4].[3]  Defendant Shields testified that no one answered, and she left no message.  [Doc. 128-8 at 58:6-15].  In addition, Plaintiffs determined from discovery that Defendant Wells called Corporal Steven Hansen and spoke at length, allegedly about the need to put Mr. Maes on suicide watch and then relayed that information to Defendant Wilson.  [Doc. 128-3 at 21:59:54, 22:02:52, and 22:04:47; Doc. 126 at 3); Doc. 128-9 at 121-125, 128-129, 129:13-21].  Plaintiffs argue that per policy, Defendant Wells' call to Corporal Hansen and Defendant Shields' call to San Luis Valley Behavior Health were recorded, and should have been maintained for a year if they are not downloaded and saved but were not.  [Doc. 128-4 at 203:3-22, 230:9-13, 254:4-19; Doc. 128-7 at 187:14-18, 181-184, 190-194].[4]

On March 4, 2020, counsel for Ms. Lieberenz contacted the SCSO and requested that "[a]ll video footage, audio recordings, or photographs showing or containing noises related to:"

---

[3] When citing to video footage and deposition testimony, this Court uses the docket number assigned by District's Electronic Court Filing ("ECF") system, but the time stamp or page and line number associated with the original recording or transcript for ease of reference.

[4] Plaintiffs also argue that "[m]ultiple other materially relevant call recordings were also destroyed, but the SCSO never produced call logs or audit trails for them. Included in these are (a) calls from Jackson's friends trying to bond him out the night of his arrest; (b) calls by Wells the next morning to express concern about Jackson; and (c) calls made by Wilson to investigate Jackson's death."  [Doc. 128 at 7 (citing [Doc. 128-4 at 234:14-20, 225:10-226:13, 202:7-203:11, 229:20-230:15)].  It is not entirely clear to the Court how probative these calls are to the analysis of SCSO, Defendant Warwick (in his official capacity), or Defendant Wells' respective liability, as they do not necessarily pertain to the subjective knowledge of Defendant Wilson as to the risk Mr. Maes posed to himself prior to his death, or the policy and practice of the SCSO.

(1) Mr. Maes's arrest or detention; (2) the activities of SCSO's employees, agents, or contractors involved in arresting Mr. Maes or working in or around the facility in which he was detained between the time of his arrest and the time his body left the custody of SCSO; (3) the activities of SCSO employees, agents, or contractors in investigating, discussing, responding to, or otherwise following up on Mr. Maes's death; and (4) any other video footage, audio recordings, or photographs that they believed to be relevant to the cause(s) of Mr. Maes's death or that were within policy to preserve be provided to counsel. [Doc. 128-11 at 1-2]. Nevertheless, the SCSO did not download or preserve audio recordings of these two calls. [Doc. 128-7 at 190:19-191:20].

Seeking information about communications related to Mr. Maes's detention and suicide, Plaintiffs subpoenaed the individual Defendants' respective mobile phone providers for information, prompting Defendants to file a Motion to Quash Subpoenas. [Doc. 86 at ¶ 2; Doc. 86-1; Doc. 86-2; Doc. 86-3]. Defendant Warwick also filed a Motion for Protective Order or in the alternative, Motion to Quash Subpoena Duces Tecum ("Defendant Warwick's Motion to Quash") to address a subpoena served on him in his individual capacity. [Doc. 85]. On April 28, 2022, Judge Neureiter held a Telephonic Motion Hearing, entertaining argument on, *inter alia*, Defendants' Motion to Quash and Defendant Warwick's Motion to Quash (collectively, "Motions to Quash"). [Doc. 92]. Judge Neureiter granted the Motions to Quash. [*Id.*]. Plaintiffs then sought information regarding the missing recordings, including an audit/activity log, which prompted counsel for the County Defendants to state, "[t]he phone vendor that records calls has advised me that the activity log regarding recordings can only go back 35 days, so there is no activity log to search for the time period relevant to this case." [Doc. 96-1 at 1].

Plaintiffs then filed an Opposed Motion for Leave to Depose Third-Party Representative of Recording Vendor ("Motion to Depose Nice"), seeking to depose SCSO's third-party vendor regarding the missing audio recordings and whether such recordings had been spoliated. [Doc. 96]. The County Defendants opposed such relief, arguing that Plaintiffs should be entitled to no more than what they requested in April 2022, *i.e.*, a log or letter demonstrating any intentional deletions of recordings. [Doc. 99 at 5]. Judge Neureiter granted Plaintiff's Motion to Depose Nice, as limited to the following subject matter: "the calls that were recorded and no longer exist. What happened to them? Who would have deleted them and why were they deleted? Were they automatically deleted? Did someone access the information before the purge and they did not save them?" [Doc. 100 at 2]. Based on the information that Plaintiffs ascertained from the Nice deposition, Plaintiffs filed this instant Motion on August 11, 2022, seeking default judgment against SCSO, Defendant Warwick, and Defendant Wilson as a sanction for spoliating the two recordings at issue. [Doc. 128]. After full briefing on the merits, the Motion for Sanctions is ripe for review.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for discovery procedures that seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007) (citation omitted). To accomplish these objectives, Rule 26(b) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence," so long as it is proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). So as to protect each party's ability to participate in the expansive discovery permitted

7

by Rule 26(b)(1), putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation. *Cache La Poudre Feeds*, 244 F.R.D. at 620.

"Spoliation" results from "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Oto Software, Inc. v. Highwall Technologies, LLC*, No. 08–cv–01897–PAB–CBS, 2010 WL 3842434, at *7 (D. Colo. August 7, 2010) (*citing West v. Goodyear Tire & Rubber, Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A trial court acts with discretion in imposing sanctions for abuse of discovery under Rule 37, *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (internal quotation marks and citation omitted), and the court has inherent power to impose sanctions for the destruction or loss of evidence. *Cache La Poudre Feeds*, 244 F.R.D. at 620 (citations omitted). Under the law of the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"), spoliation sanctions are generally proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was "imminent," and (2) the adverse party was prejudiced by the destruction of the evidence. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (internal quotation and citation omitted).[5]

---

[5] Courts have applied Rule 37(e) of the Federal Rules of Civil Procedure to digital audio recordings. *See Hsueh v. New York State Dep't of Fin. Servs.*, No. 15 CIV. 3401 (PAC), 2017 WL 1194706, at *4 (S.D.N.Y. Mar. 31, 2017) (*citing Brackett v. Stellar Recovery, Inc.*, No. 3:15-cv-00024, 2016 WL 1321415, at *1-2 (E.D. Tenn. Feb. 24, 2016); *Savage v. City of Lewisburg, Term.*, 10 Civ. 0120, 2014 WL 6827329, at *2 (M.D. Tenn. Dec. 3, 2014)). But some of those courts have held that Rule 37(e) applies only to situations where a party failed to take reasonable steps to preserve ESI, not situations where a party intentionally deleted the recording. *Hsueh*, 2017 WL 1194706, at *4. Here, Plaintiffs contend that Defendant Wilson listened to, then selectively saved the calls he wanted, allowing the remainder of the calls to be destroyed through the automatic purge. [Doc. 128 at 11]. While Defendant Wilson testified that he did not listen to a recording of Defendant Wells' call to Corporal Hansen [Doc. 148-4 at 254:4-19], and the County Defendants argue that Plaintiffs' contention is merely speculative [Doc. 153 at 10], it is undisputed that the call log reflects that a user identified as "Ken Wilson" played back the recording. [Doc. 130 (conventionally submitted Ex. 2)]. Given this disputed fact, and the fact that neither side argues for its application, this Court does not apply Rule 37(e).

8

## ANALYSIS

### I. Duty to Preserve

Under Rule 37, the Court's first inquiry is whether the County Defendants were under a duty to preserve the two recordings. While this instant action was not filed until 451 days after Mr. Maes's death, [*id.* at 7], a party's duty to preserve is not triggered solely when formal litigation is initiated. Rather, putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation. *Cache La Poudre*, 244 F.R.D. at 620. In so finding, the *Cache La Poudre* court cited *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003), which found that "the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Following the *Cache La Poudre* order, another court in this District articulated the standard as: "putative litigants have a duty to preserve documents or materials that may be relevant to potential future litigation." *Asher Associates, LLC. v. Baker Hughes Oilfield Operations, Inc.*, No. 07–cv–01379–WYD–CBS, 2009 WL 1328483 (D. Colo. May 12, 2009) (citing *Zubulake*, 220 F.R.D. at 216).

Although they argue that the recordings were automatically overwritten a year after the incident, [Doc. 153 at 8], the County Defendants do not argue that they were not under a duty to preserve at that time. Even if they had, this Court would not be persuaded given the investigation into Mr. Maes's death by Sergeant Richard Pascoe ("Sergeant Pascoe"), the referral of the investigation to the Colorado Bureau of Investigation by December 12, 2019 [Doc. 128-10], the County Defendants' own acknowledgment that Plaintiffs sought information regarding the calls before they were overwritten and/or destroyed [Doc. 153 at 9 n.5 (acknowledging that Sergeant Pascoe's report was provided to Plaintiffs in April 2021)], and the litigation

9

preservation letter dated March 4, 2020 that broadly requests that the SCSO send copies of all audio recordings showing or containing noises related to the activities of SCSO employees, agents, or contractors involved in arresting Mr. Maes or working in or around the facility in which he was detained between the time of Mr. Maes's arrest and the time his body left the custody of the SCSO. [Doc. 128-11].[6] Further, the County Defendants do not provide any persuasive explanation as to why, despite such notice, all of the recordings associated with Mr. Maes's detention were not preserved. *See generally* [Doc. 153]. Indeed, the Federal Rules of Civil Procedure are specifically designed to address the asymmetry of information between parties. *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, <u>the parties' relative access to relevant information</u>, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable) (emphasis added) & ad. Comm. notes ("The direction to consider the parties' relative access to relevant information adds new text to provide explicit focus on considerations already implicit in present Rule 26(b)(2)(C)(iii). Some cases involve what often is called "information asymmetry." One party — often an individual plaintiff — may have very little

---

[6] In determining when a duty to preserve arose, the Second Circuit has focused the inquiry on whether the evidence was destroyed at a time when fear of potential future litigation could have plausibly motivated the spoliation. *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998) *overruled on other grounds by Rotella v. Wood,* 528 U.S. 549 (2000). The Eighth Circuit has instructed that the "ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence *indicating a desire to suppress the truth*, not the prospect of litigation." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (emphasis added).

discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so."). This Court respectfully rejects the County Defendants' invitation to shift responsibility to Plaintiffs by arguing that Plaintiffs did not follow up with a request for the phone calls before their destruction. [*Id.* at 9 n.5]. Based on the specific facts in the record before it, this Court finds that Plaintiffs have satisfied the first prong of the spoliation analysis, i.e., that Defendants SCSO, Warwick and Wilson were all under a duty to preserve evidence and its analysis proceeds as to whether Plaintiffs were prejudiced by the loss of the two recordings.

## II.     Prejudice

The first step in determining whether Plaintiffs have been prejudiced by the loss of the two recordings is considering the probative value of the evidence. Plaintiffs allege violations of the Fourteenth Amendment against the SCSO, Defendant Warwick, in his official capacity, and Defendant Wilson in his individual capacity. For individual liability under § 1983, claims based on a jail suicide usually implicate deliberate indifference, which requires establishing an objective and subjective component. *Heidel v. Mazzola*, 851 F. App'x at 837, 840 (10th Cir. Mar. 21, 2021) (citing *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020)). Suicide satisfies the objective component. *Id.* (citing *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)). Thus, to establish liability, Plaintiffs must demonstrate that Defendant Wilson "knew [Mr. Maes] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020) (citation omitted). For municipal

11

liability,[7] Plaintiffs must establish three elements: (1) an official policy or custom, (2) causation, *i.e.*, that the government's policy or custom caused the injury, and (3) state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

***Shields Call to San Luis Valley Behavioral Health***. The substance of Defendant Shields' call to San Luis Valley Behavioral Health may be relevant to Defendant Shields' respective, subjective understanding of the risk to Mr. Maes. Plaintiffs have deposed Defendant Shields, who has testified under oath that she did not leave a message. [Doc. 1 at ¶ 95]. Presumably, had she left a message, San Luis Valley Behavioral Health would also have the recording in its possession. There is no evidence in the record, however, to suggest that San Luis Valley Behavioral Health ever acknowledged the existence of any such message.

And it is unclear to this Court how Defendant Wilson – the alleged spoliator – "has gained an immeasurable advantage in this case" [Doc. 128 at 7], by purportedly erasing a telephone call between Defendant Shields and San Luis Valley Behavioral Health in which he is not alleged to have participated. Plaintiffs do not explain how any statements (or lack of statements) made by Defendant Shields would be evidence of Defendant Wilson's subject understanding of the risk to Mr. Maes.

Nor is this Court convinced – even assuming its existence – that a substantive message would support a conclusion that a policy, custom, or practice was the moving force behind the alleged violation of Mr. Maes's constitutional rights. Indeed, the Parties can argue the significance of Defendant Shields' call to San Luis Valley Behavioral Health as to whether Defendant Shields had a subjective understanding that there was a policy, practice or custom

---

[7] Plaintiffs' claims against Defendant Warwick in his official capacity are "equivalent to a suit against a governmental entity; thus, [the Tenth Circuit's] municipal-liability cases apply." *Heidel v. Mazzola*, 851 F. App'x 837, 840 (10th Cir. Mar. 21, 2021), *cert. denied*, 142 S. Ct. 483 (2021).

12

relevant to Plaintiffs' claim that Mr. Maes's constitutional rights were violated, but Plaintiffs do not require the recording to do so. Based on the record before it, this Court concludes that Plaintiffs have not carried their burden of establishing prejudice to warrant default judgment.

**Defendant Wells Call to Corporal Hansen**. It is also unclear how the recording of the telephone call between Defendant Wells and Corporal Hansen pertains to Defendant Wilson. While Plaintiffs argue that "[i]f Wells, Wilson, or Hansen used any derogatory or otherwise inflammatory language about Jackson, the jury will never hear it," there is no evidence to suggest that such generic, undefined language would again, reflect any subjective recognition of the risk of harm to Mr. Maes that the individual Defendants held prior to Mr. Maes's suicide. Nor is it clear that a recording of a conversation between Defendant Wells and Corporal Hansen would reflect what Defendant Wells said to Defendant Wilson, [Doc. 128 at 7], or more importantly, either Defendant Wilson's subjective understanding of risk to Mr. Maes before his death or any policy, custom or practice of the County that may have been a moving force behind the asserted constitutional violation.

The party seeking sanctions has the burden of proof to show that the requirements for imposing them have been met, as well as to the question of what sanction should be imposed. *See, e.g., HT Holdings of Colorado, LLC v. Karndean Int'l, LLC*, No. 17-CV-01926-MSK-KLM, 2018 WL 11220397, at *2 (D. Colo. Nov. 13, 2018) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1250-51 (10th Cir. 2010)). Though it is troubled by the County Defendants' actions that permitted these recordings to be overwritten and/or destroyed – indeed, courts rely upon parties to maintain evidence to facilitate the fair adjudication of disputes – this Court concludes that Plaintiffs have failed to carry their burden to establish material prejudice. Nor has

the Court seen convincing evidence of wrongful intent to justify default judgment, or any lesser sanction at this point.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion for Sanctions [Doc. 128] is respectfully **DENIED**.

DATED:  January 6, 2023                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge